Citation Nr: 1518699 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 10-41 002 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for left knee degenerative joint disease (DJD) with exostosis, status post arthroscopic medial meniscectomy.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Sarah Richmond, Counsel



INTRODUCTION

The Veteran served on active duty with the Missouri Army National Guard from September 1967 to February 1968, December 2003 to January 2005, and February 2005 to January 2009. He also served in the Southwest Asia Theater of operations from January 2004 to October 2004. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah, which processed this and other claims under the pre-separation program. 

This case was previously before the Board in April 2014 at which time the Board, in pertinent part, denied entitlement to an initial rating higher than 10 percent for left knee DJD with exostosis, status post arthroscopic medial meniscectomy. Pursuant to a joint motion for partial remand, however, the U.S. Court of Appeals vacated the Board's April 2014 decision in October 2014, insofar as it denied entitlement to an initial rating higher than 10 percent for the left knee disability. Specifically the joint motion noted that the Board should have considered evidence of dislocated, semilunar cartilage of the left knee with frequent episodes of locking, pain, and effusion which would warrant a 20 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5258. The parties also agreed that the Board provided inadequate reasons and bases when it concluded that the Veteran's 10 percent rating under Diagnostic Code 5260-5010 contemplated any complaints of pain, fatigue, swelling, weakness, or lack of endurance.


FINDING OF FACT

The Veteran's left knee disability is manifested by flexion greater than 30 degrees and extension less than 10 degrees; evidence in the record indicates partial medial and lateral meniscectomies and dislocated (torn), semilunar cartilage of the left knee with frequent episodes of locking, pain and effusion.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for left knee DJD with exostosis, status post arthroscopic medial meniscectomy, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5260-5010 (2014).

2. The criteria for a separate rating of 20 percent for left knee dislocated semilunar cartilage with episodes of locking, pain, and effusion into the joint, have been met, effective February 1, 2009. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5258 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2014). Proper notice from VA must inform the claimant, prior to the initial unfavorable decision on a claim by the AOJ, of any information and any evidence not of record (1) that is necessary to substantiate the claim, (2) that VA will seek to provide, and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

With respect to the higher rating claim on appeal, the Veteran was granted service connection for his left knee disability and assigned an initial disability rating and effective date in the April 2009 rating decision currently on appeal. As the claim was more than substantiated in that it was proven, the purpose that the notice is intended to serve has been fulfilled and no additional notice is required for those claims. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran has not alleged prejudice with respect to the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. The Veteran was notified by correspondence dated in October 2008 of the criteria for establishing service connection for his left knee disorder, the evidence required, and his and VA's respective duties for obtaining evidence. He also was notified of how VA determines disability ratings and effective dates. That letter addressed all notice elements and predated the adjudication of the claim by the RO in April 2009. 

VA is required to aid a claimant in the procurement of pertinent records, whether or not the records are in Federal custody. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. §§ 3.159(c) (2014). VA also is required to provide a medical examination or obtain a medical opinion when necessary. 38 U.S.C.A. § 5103A(d) (West 2002); 38 C.F.R. §§ 3.159(c)(4) (2014). 

Private and VA treatment records have been obtained. The Veteran's medical records from the Social Security Administration (SSA) also were scanned into the Virtual VA system in April 2010. 

VA medical examinations were conducted in October 2008, March 2011, and March 2013. While the October 2008 and March 2011 examiners did not have access to the claims file, the 2008 examination was conducted before the Veteran left service and the March 2011 examiner reviewed available VA treatment records. These two examiners, as well as the March 2013 VA examiner, interviewed the Veteran and undertook an assessment of his service-connected disability currently on appeal. Diagnoses were made by each examiner. All questions necessary to render a decision were answered and the Board finds that these examinations are adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). 

Neither the Veteran nor his representative has identified any further development necessary for a fair adjudication of the claims that has not been completed. Therefore, the Board finds that no further notice or assistance is required and that VA's duties to notify and to assist have been satisfied. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Therefore, appellate review may proceed. Bernard v. Brown, 4 Vet. App. 384 (1993). 

II. Increased Rating for the Left Knee Disability

Disability ratings are based on the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating will be assigned. Id. 

In a claim for a greater original rating after an initial award of service connection, such as the initial rating claim for the right ankle disability, all of the evidence submitted in support of the veteran's claim is to be considered. See Fenderson v. West, 12 Vet. App. 119 (1999). The Court has held that in determining the present level of a disability for any increased evaluation claim, the Board must consider the application of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. 

The Veteran bears the burden of presenting and supporting his claim for benefits. 38 U.S.C.A. § 5107(a). In its evaluation, the Board considers all information and lay and medical evidence of record. 38 U.S.C.A. § 5107(b). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board gives the benefit of the doubt to the claimant. Id. 

Under the anti-pyramiding provision of 38 C.F.R. § 4.14 , the evaluation of the "same disability" or the "same manifestation" under various diagnoses is to be avoided. The Court held, in Esteban v. Brown, 6 Vet. App. 259 (1994), that for purposes of determining whether the appellant is entitled to separate ratings for different problems or residuals of an injury, such that separate evaluations do not violate the prohibition against pyramiding, the critical element is that none of the symptomatology for any one of the conditions is duplicative of, or overlapping with, the symptomatology of the other conditions. 

The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the current diagnosis and demonstrated symptomatology. Any change in a diagnostic code by VA must be specifically explained. Pernorio v. Derwinski, 2 Vet. App. 625 (1992). 

The Veteran seeks a higher rating than the initial 10 percent rating assigned for his left knee disability. As noted, service connection for left knee DJD with exostosis, status post arthroscopic medial meniscectomy was granted in the April 2009 rating decision now on appeal and an initial 10 percent rating was granted for the knee, effective February 1, 2009, the day after discharge from his last period of active duty. 

In his June 2009 Notice of Disagreement (NOD), the Veteran contends that his left knee disorder warrants a higher rating due to continued deterioration as the knee continues to pop out of place and there is a constant grinding sensation in the knee. He also complained of a sensation of a loose bone inside his left knee. He claimed that his left knee was constantly in severe pain and that he had to take Hydrocodone. 

The Veteran's left knee disability has been rated under Diagnostic Code 5260-5010 for limitation of flexion and traumatic arthritis. Hyphenated diagnostic codes are used when a rating for a particular disability under one diagnostic code is based upon rating of the residuals of that disability under another diagnostic code. 38 C.F.R. § 4.27. The first four digits, 5260 in this case, represent the diagnostic code used to rate limitation of motion of the knee, or more specifically to rate flexion of the leg. The second four digits after the hyphen, 5010 in this case, represent the diagnostic code for rating traumatic arthritis. 

Normal range of motion of the knee is from 0 degrees extension to 140 degrees flexion. 38 C.F.R. § 4.71, Plate II. Under Diagnostic Code 5260, a 10 percent rating is warranted when flexion is limited to 45 degrees. A 20 percent rating is warranted when flexion is limited to 30 degrees. A 30 percent rating is warranted when flexion is limited to 15 degrees. 

According to Diagnostic Code 5010, traumatic arthritis, substantiated by X-ray findings, should be rated as degenerative arthritis. Degenerative arthritis established by X-ray findings is rated under Diagnostic Code 5003, which is rated based on the limitation of motion under the appropriate diagnostic code for the specific joint involved, or in this case, Diagnostic Code 5260 for limitation of leg flexion or Diagnostic Code 5261 for limitation of leg extension. Where there is X-ray evidence of arthritis and limitation of motion, but not to a compensable degree, a 10 percent rating is assigned for each major joint affected. 38 C.F.R. § 4.71, Diagnostic Code 5003. The knee is considered a major joint. 38C.F.R. § 4.45. Ratings for arthritis cannot be combined with ratings based on limitation of motion of the same joint. 

Under Diagnostic Code 5261, a 10 percent rating is warranted when extension is limited to 10 degrees. A 20 percent rating is warranted when extension is limited to 15 degrees. A 30 percent rating is warranted when extension is limited to 20 degrees. 

Under Diagnostic Code 5257, a knee impairment with recurrent subluxation or lateral instability is rated 10 percent when slight, 20 percent when moderate, and a maximum 30 percent when severe. 

The Board also must consider pain, weakness, excess motion, incoordination, excess fatigability, and other functional limitation factors when determining the appropriate rating for a disability using the limitation of motion diagnostic codes. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

A claimant who has arthritis or limitation of motion and instability of a knee may be rated separately under Diagnostic Codes 5003 and 5257. However, any separate rating must be based on additional disabling symptomatology that meets the criteria for a compensable rating. VAOPGCPREC 23-97 (1997), 62 Fed. Reg. 63604 (1997); VAOPGCPREC 9-98 (1998), 63 Fed. Reg. 56704 (1998). Separate ratings under Diagnostic Code 5260 for limitation of flexion of the leg and Diagnostic Code 5261 for limitation of extension of the leg may be assigned for disability of the same knee. However, any separate rating must be based on additional disabling symptomatology that meets the criteria for a compensable rating. VAOGCPREC 9-2004 (2004); 69 Fed. Reg. 59990 (2004). 

The Veteran underwent a VA examination in October 2008 while still on active duty, but approximately three months before service connection became effective for his left knee disability. He told the examiner that his left knee condition was intermittent with remissions since the knee gave out and he fell in 2004 in Kuwait. The Veteran took Celebrex daily for his knee pain. It was noted that the Veteran had had surgery on his left knee in 2004. Knee symptoms included as follows: giving way, instability, pain, stiffness, weekly locking, and swelling. 

On examination in October 2008, the Veteran's gait was normal. Range of motion measurements were as follows for both the left knee: flexion to 140 degrees; and extension to 0 degrees with pain beginning at 60 degrees for both active and passive range of motion. There was no additional limitation of motion with repetitive testing. The October 2008 VA examiner also noted painful movement in the left knee and clicks or snaps. There was no evidence of crepitation, a mass behind a knee, grinding, instability, or patellar or meniscus abnormalities. An X-ray study of the left knee showed no acute fracture, dislocation, or joint effusion with very small osteophytes seen near each patella. Diagnosis of the left knee was DJD, exostosis, and status post-surgery. 

A private treatment record from Ozarks Community Hospital showed complaints of knee pain in March 2009. 

An October 2009 VA medical record noted that the Veteran took Oxycodone for degenerative joint disease, but without relief. 

Records from the Social Security Administration (SSA) were received in April 2010 in connection with the Veteran's claim for disability benefits, but they contain no pertinent information regarding the Veteran's claim for a higher rating for his service-connected left knee disability. 

A September 2010 VA X-ray of the left knee showed osteoarthritis and tendinitis. A September 2010 VA treatment record showed the Veteran complained of progressive pain in his knees over two years. Assessment was bilateral knee arthralgia. It also was noted that the Veteran wanted to discontinue Methadone but that he would continue Oxycodone for his bilateral knee pain. 

The Veteran underwent a VA examination in March 2011. He complained of flare-ups of left knee pain, which occurred about three times a week and which he described as severe and which lasted hours. These flare-ups were brought on by doing too much the day before. He endorsed additional limitation of motion and functional impairment during flare-ups to be at 70 percent. He reported that he could stand about 10 minutes and walk about 30 yards slowly. 

On examination in March 2011, range of motion measurements were as follows: flexion of the left knee to 115 degrees with active range of motion and to 140 degrees with passive range of motion with pain beginning at 115 degrees with both active and passive range of motion; and extension was to 0 degrees. There was no additional limitation of motion with repetitive testing. Diagnosis was left knee DJD with osteoarthritis and internal derangement, left knee tendonitis. 

Private and VA treatment records show that the Veteran underwent surgery for his left knee disorder in August 2011, but there was no evidence of complications after surgery and he did not require convalescence for a period of more than a month. Therefore, a request for a temporary total rating pursuant to the provisions of 38 C.F.R. § 4.30 was denied in a March 2013 rating decision. The Veteran was granted service connection for a left knee scar and awarded a noncompensable disability rating, effective August 18, 2011, in the March 2013 rating decision; however, this rating is not currently on appeal before the Board.

The Veteran underwent another VA examination in March 2013. It was noted that he had an arthroscopy for a medial meniscus tear in 2006 and an arthroscopy for a lateral meniscus tear in 2011. The Veteran complained that his left knee pain was more severe than the right, daily and sharp, and with and without weight bearing activities. He denied any joint effusion in either knee and did not take pain medication for his knees. 

On examination in March 2013, range of motion measurements were as follows: flexion of the left knee was to 120 degrees with pain beginning at 120 degrees; and extension was to 0 degrees without pain. There was no additional limitation of motion with repetitive testing. The March 2013 VA examiner noted that the Veteran had functional loss or impairment due to his service-connected left knee disorder. The examiner noted less movement than usual in the left knee and pain on movement of the left knee. The report of examination on the left knee also described or noted no tenderness, no muscle weakness, no instability, and no subluxations or dislocations. However, the examiner did note that the Veteran had a meniscus (semilunar) tear in the left knee with frequent episodes of joint locking, pain, and effusion. The March 2013 VA examiner opined that the Veteran's bilateral knee disabilities did not impact his ability to work. 

The Board finds that an initial rating in excess of 10 percent for the left knee assigned under Diagnostic Code 5260-5010 for limitation of motion and arthritis, since February 1, 2009, is not warranted. Specifically, since the grant of service connection on February 1, 2009, there is no medical evidence for the left knee of flexion limited to 30 degrees to warrant a 20 percent disability rating under Diagnostic Code 5260. The VA examinations of record showed flexion was never measured below 115 degrees with pain during active and passive range of motion, or after repetitive motion with consideration of other functional limitation factors. 

In addition, a higher or 20 percent rating under Diagnostic Code 5010 or 5003 requires X-ray evidence of the involvement of two or more major joints or two or more minor joint groups. Here, the Board is only reviewing the rating of the left knee joint, so a rating for the left knee in excess of 10 percent based on Diagnostic Code 5010 (through Diagnostic Code 5003) is not available. 

Therefore, a higher initial rating for the Veteran's left knee disability pursuant to Diagnostic Code 5260-5010 is not warranted. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010, 5260. 

The Board next will consider whether higher or separate ratings might be assigned for the service-connected left knee disability under other diagnostic codes. 

In the VA examinations of record there is no evidence that the Veteran had limitation of extension to 10 degrees or more to warrant separate or higher rating for the left knee. Therefore, a separate or higher rating for the Veteran under Diagnostic Code 5261 is not warranted for the period on appeal. 38 C.F.R. § 4.71a, Diagnostic Code 5261. 

The Board observes that the May 2007 operative report notes that the Veteran had "some laxity" in his left medical cruciate ligament. Likewise, the October 2008 examination report notes that the Veteran complained of instability in his left knee. However, the October 2008 examination report notes that there was no instability on examination. Likewise, in the evidence of record following service there is also no objective medical evidence of subluxation or lateral instability of the left knee in the VA examinations to support a separate rating under Diagnostic Code 5257 for recurrent subluxation or lateral instability. In particular, both the 2011 and 2013 VA examination reports did not find any anterior instability, posterior instability, or medial lateral instability in the left knee. Likewise, there was no evidence or history of recurrent patella subluxation or dislocation. Therefore, the Board finds that recurrent lateral instability is not objectively shown. Accordingly, a separate rating under Diagnostic Code 5257 is not warranted.

The Board also has considered whether separate or higher ratings were warranted under other diagnostic codes pertaining to knee disabilities that would afford the Veteran a higher rating. The March 2013 VA examination report shows that the left knee had a meniscal tear with frequent episodes of joint locking, pain, and joint effusion. The Veteran had a history of surgery to his left meniscus for tear in 2008 and 2011 and had previously complained of locking, pain, and swelling in the left knee on examination in October 2008, which is consistent with the March 2013 examiner's findings; though the October 2008 examination report found no effusion or dislocation on objective evaluation. Under Diagnostic Code 5258, a dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint warrants a 20 percent rating. Based on the March 2013 VA examination findings and complaints from the Veteran dating back to 2008, a separate 20 percent rating for the left knee semilunar cartilage tear with locking, pain, and effusion in the joint is warranted. A separate rating is warranted in addition to the 10 percent rating assigned based on limitation of motion of the left knee, as pain, locking, and effusion in the joint is separate impairment from limitation of motion due to arthritis. Therefore, to assign a separate 20 percent rating under Diagnostic Code 5258 is not considered pyramiding under 38 C.F.R. § 4.14. Twenty percent is the highest schedular rating available under Diagnostic Code 5258.

As for the additional diagnostic codes pertaining to the knee, there is no evidence of ankylosis of the left knee to warrant a rating under Diagnostic Code 5256; and no evidence of impairment of the tibia and fibula to warrant a rating under Diagnostic Code 5262. 

The Board has considered the private medical evidence in the record that the Veteran underwent left knee partial medial and lateral meniscectomies in May 2007 and August 2011. Given this history, the Board has also considered whether the Veteran is entitled to a separate rating under Diagnostic Code 5259 pertaining to removal of symptomatic semilunar cartilage. Under Diagnostic Code 5259, a 10 percent rating is the maximum evaluation permitted; therefore, a higher rating in excess of the Veteran's current 10 percent evaluation is not possible under this code. 

The Board further finds that a separate rating under this same diagnostic code (Diagnostic Code 5259) is also not warranted. As noted above, pursuant to VAOPGCPREC 9-98, given that the Veteran is assigned a 20 percent rating for dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint, the Board notes that to assign a separate 10 percent rating under Diagnostic Code 5259 would compensate the Veteran for the same symptoms already considered under Diagnostic Code 5258 and would violate the rule against pyramiding. See 38 C.F.R. § 4.14. In other words, a separate rating under Diagnostic Code 5259 would be based, at least in part, on symptomatic semilunar cartilage and such symptomatology is already contemplated in the Veteran's current 20 percent rating under Diagnostic Code 5258. The Veteran's complaints of pain, stiffness, and weakness also have been considered with regard to whether higher rating based on limitation of motion under Diagnostic Codes 5260-5010 is warranted. The Board finds that these symptoms are adequately considered in the currently assigned 20 and 10 percent disability evaluations. 

The evidence also shows that the Veteran has complained of pain and limitation of motion associated with the left knee. See, e.g., the Veteran's comments in his September 2010 VA Form 9, Substantive Appeal. The medical evidence for the period on appeal indicates that the Veteran has been treated with pain medications. Each VA examination of record considered the effects of painful motion. The latest March 2013 VA examiner estimated there was no additional limitation of motion on repetitive testing so he did not reach those degrees of limitation of flexion or extension that would result in a compensable rating or a higher 20 percent rating based on limitation of motion. 

The Board observes that the current 10 percent rating for arthritis and limitation of motion under Diagnostic Code 5260-5010 and the 20 percent rating under Diagnostic Code 5258 for symptomatic removal of semilunar cartilage for the left knee disability contemplates the effects of any complaints of pain, fatigue, swelling, weakness, or lack of endurance. Diagnostic Code 5010, through Diagnostic Code 5003, mandates that limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or painful motion. Diagnostic Code 5258 also contemplates the Veteran's complaints of locking and effusion into the left knee joint. Accordingly, consideration of other factors of functional limitation does not support the grant of any higher rating for the initial ratings already assigned. 38 C.F.R. §§ 4.40 , 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995).

The Veteran is competent to report symptoms associated with his left knee disability, and there is no reason shown to doubt his credibility in this regard. However, as a layperson, lacking in medical training and expertise, he cannot provide a competent opinion on a matter as complex as the severity of the clinical manifestations of his left knee disability and his views are of little probative value. And, even if his opinion were entitled to be accorded greater probative value, it is far outweighed by the medical evidence of record demonstrating clinical analysis of the left knee. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006).

In view of the foregoing, the Board denies an increased rating higher than 10 percent for left knee limitation of motion, and assigns a separate 20 percent rating based on locking and effusion into the left knee due to dislocated semilunar cartilage, effective February 1, 2009. To the extent that the Veteran contends entitlement to a higher rating for his left knee disability, the preponderance of the evidence is against the claim; there is no reasonable doubt to be resolved; and any further increased rating is not warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. at 57-58. The Board has considered staged ratings under Hart v. Mansfield, 21 Vet. App. 505 (2007), but concludes that they are not warranted. 
 
The above determinations are based on application of pertinent provisions of VA's Schedule for Rating Disabilities. The Board notes that there is no indication that referral is warranted for consideration of the assignment of a disability rating for the left knee on an extraschedular basis during any period of this appeal. 38 C.F.R. § 3.321(b) . 

To determine whether a claim should be referred for consideration of an extraschedular rating requires an analytical process. First, a determination of whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology must be made. If the rating criteria are inadequate, the Board must proceed to determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors, such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration. Thun v. Peake, 22 Vet. App. 111 (2008). 

The symptoms associated with the left knee disability (i.e., limitation of motion and dislocated semilunar cartilage with episodes of locking, pain, and effusion) are contemplated by the 10 percent rating assigned under Diagnostic Code 5260-5010 and separate 20 percent rating assigned under Diagnostic Code 5258. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Thus, the Board finds that these rating criteria reasonably describe the Veteran's disability. For these reasons, referral for consideration of an extraschedular rating is not warranted for this claim.

The Board considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) was raised. Rice v. Shinseki, 22 Vet. App. 447 (2009). Entitlement to a TDIU is raised where a Veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). In this case, the issue is not raised because during the course of this appeal the March 2013 VA examiner found that the Veteran's left knee disability did not impact his ability to work, although subsequently the Veteran was granted a TDIU in a March 2013 rating decision based on another service-connected disability. 



ORDER

Entitlement to an initial disability rating in excess of 10 percent for left knee DJD with exostosis, status post arthroscopic medial meniscectomy is denied.

Entitlement to a separate rating of 20 percent for dislocated semilunar cartilage with episodes of locking, pain, and effusion in the left knee is granted, effective February 1, 2009, subject to the rules governing the payment of monetary benefits.



____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs